[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff B M Processing Company Inc., hereinafter (B M), a Connecticut Corporation with its principal place of business in South Windsor, brings this action in six counts against the defendant, Tonsha Business Systems Inc., hereinafter (Tonsha), also a Connecticut corporation with its principal place of business in South Windsor.
In the first count plaintiff alleges a breach of contract claiming that the parties entered into an agreement under which the defendant was to design and print certain materials known as presentation covers for the plaintiff. The plaintiff claims that the color and quality of these presentation covers were supposed to match exactly the color and quality of certain brochures that the defendant had previously had printed by the defendant. The plaintiff alleges that after examining two proofs, the defendant acknowledged that the quality and color of the presentation covers did not match the brochure but assured plaintiff that the final product would match the quality and color of the brochure and that relying upon this assurance the defendant was authorized to print the final presentation covers and that for this the plaintiffs paid the defendant a partial payment of $4,265.12. The plaintiff alleges a breach of agreement in that the color and quality of the covers do not match the brochure; that the plaintiff cannot use these covers for any purpose and that the plaintiff has suffered damages because of this breach.
In the second count the plaintiff repeats the allegations of the first count and in addition thereto notes that plaintiff delivered certain original artwork and other proprietary materials to the defendant to assist in the design and preparation of the printing of the presentation covers; that the defendant was a bailee and that defendant had refused to return this material to the plaintiff despite the plaintiff's demand; that such refusal is a breach of the agreement between the parties and as a result the plaintiff has been deprived of the value of the property and may be forced to recreate same to its loss and damage.
In the third count the plaintiff repeats all of the CT Page 3904 allegations of the first two counts and further alleges that the defendant's refusal to return the personal property after demand constitutes theft of the plaintiff's property within the meaning of General Statutes Section 52-564.
In the fourth count plaintiff alleges a breach of the covenant of good faith and fair dealing implied in the agreement.
The fifth count is a CUTPA action in which the plaintiff claims that the defendant's conduct constitutes an unfair deceptive practice in violation of § 42-110a of the Connecticut General Statutes. The plaintiff maintains that the defendant will not return the personal property and said refusal to return the artwork is wrongful because defendant knows that some or all of it is not related to the presentation cover job for which defendant claims a balance due and that the reason for refusing to return the artwork is a pretext designed to force the plaintiff to accept the presentation covers despite the defendant's breach of agreement and that the refusal to return said property constitutes an intentional violation of the plaintiff's rights to said personal property.
In the sixth count plaintiff alleges all of the facts mentioned above and in addition claims that the defendant was negligent in the performance of his duties to perform printing services in a workman-like and timely fashion and with that degree of care and skill required of other printers required in the area and as a result of the defendant's negligence the plaintiff has suffered damages.
The defendant has filed an answer in which it denies all of the pertinent allegations of the plaintiff's complaint and in addition thereto has filed a counterclaim in three counts. In the first count the defendant alleges a breach of contract by the plaintiffs in that the plaintiffs signed off on a proposal to print 5000 of the presentation covers for which the defendant was to be paid $6,552.92 and although the defendant has performed the work and the services provided for in said proposal the plaintiff has refused to pay the balance of $2,287.80 due defendant.
In the second count the defendant alleges a breach of the covenant of good faith and fair dealing in that the plaintiff CT Page 3905 was throughout the work fully informed and supplied with proofs of the work in progress and that the plaintiff was required to "sign off" approval of the work in progress before the defendant proceeded and that the plaintiff approved and accepted all the work performed on any subsequent phase of the work and that the plaintiff wrongfully refused to pay the balance due for work which it had authorized.
In the third count the defendant alleges a violation of § 42-110a (CUTPA) in that refusing to pay the balance due for the work which the plaintiff approved and authorized and demanding the presentation covers and other artwork produced in connection with the project was deceptive and a violation of the Unfair Trade Practices Act and that plaintiff's statements that the work was not produced to his requirements was false since the product had been previously approved by it.
The plaintiff has filed a reply in which it denies the allegations of the defendant.
The court having heard the parties believes that the following facts are true and arrives at the following conclusions. In July of 1994 the plaintiff, B M, and the defendant, Tonsha, entered into an agreement pursuant to which the defendant agreed to design and to print certain materials known as presentation covers for the plaintiff using artwork and other original materials supplied by the plaintiff. This agreement provided that the color and quality of the presentation cover would match the color and quality of certain brochures that the defendant had previously printed for the plaintiff which the plaintiff intended to use in conjunction with the presentation covers. A presentation cover is in the nature of a folder with a pocket which would house promotional materials for B M's use in the generation of new business. Between the months of June and September 1994 the plaintiff and defendant negotiated terms for the printing of the plaintiff's new presentation covers. Negotiations were conducted for the plaintiff by Mr. DeRose who came up from New York each time there was a conference with respect to the presentation covers. David Hand a vice president and creative director of the defendant's company conducted the principal negotiations for the defendant although he was joined at times by Sharon Fales president of the defendant Company. There was no written contract but it CT Page 3906 is undisputed that the defendant agreed to produce some 5000 presentation covers for which the plaintiff agreed to pay $5911.00. The anticipated delivery date was late October of 1994. Mr. DeRose had made it clear to the defendant that color was important and that he wanted the presentation covers to match the coloring in the brochures as closely as possible and this was understood by the defendant. Both parties realized that the presentation covers were to be used in conjunction with the brochures. In accordance with the terms of the agreement the plaintiff paid $4265.12 prior to printing of the covers.
The principal controversy in this case revolves around the issue of color. Color is subjective and numerous factors such as paper stock, ink, temperature, humidity and design will affect color. When DeRose first came in contact with Hand with respect to the issue of color Hand gave DeRose several choices including a two color process, use of foil and a four-color process. The last is that which was chosen by DeRose. The defendant provided the plaintiff with a proof which is Plaintiff's Exhibit No. 10 in which the colors in the proof closely approximated the colors in the brochure. This proof was returned with markings on two of the coupons and on the coupon redemption report. Each marking identifies a change in the background.
A second proof was submitted which again very closely approximated the coloring of the brochure. This proof was returned with three corrections. The first was on a coupon labeled "rebate". It has two notations which indicate that there was to be an addition to the red type. The second correction was the elimination of a white dot on the "redemption report" and the third indicated that a bar was to be added in the area that said "B M processing preliminary invoice list". On the back of this Exhibit D is a white label which states "OK — W/Green Bar added and Red correction". In conjunction with this proof a sign off sheet was returned signed by Mr. DeRose dated October 5, 1994. It calls for a quantity of 5000 and ink to be by a four color process. It contains a checkmark and an arrow next to the notation "OK to print as is". Beneath this is a line labeled "New proof wanted with changes". There is no check mark opposite this line. Under the label "Comments" just below the above mentioned lines is written the words "Green screen in top first color bar — beef up red". CT Page 3907
The defendant changed the coloring and proceeded to print 5000 of these presentation covers plus an overrun without having the changed covers examined by a representative from the plaintiff. These presentation covers were printed by another company not by Tonsha. Plaintiffs were not aware that the printing was going to be done by another company. They were under the impression that the printing would be done by Tonsha.
The final product which is marked as Exhibits 12 and 13 is substantially different in coloring from the first and second proofs and from the brochure. The difference is easily recognizable in such areas as the red markings around the logo which now is almost purple compared to the bright red of the original proofs and brochure. The entire presentation cover is substantially darker with the coupon redemption report being much less readable with the various blues and greens substantially darker than the proofs and the brochure. The overall background of the two coupons which were to have the backgrounds changed are substantially different from the proofs and the brochure. The colors on the first and second proofs very closely approximated the colors on the brochure. (Exhibit 3.)
If Derose had approved the proofs as prepared with only the addition of the "extra green bar" on the computer sheet, the final product would have matched the brochure very closely. In the opinion of the court it would be impossible to match the colors of the brochure exactly.
It was the obligation of the defendant to produce a commercially acceptable product i.e. one in which the colors match the brochure as closely as the printer was able to do. In this the defendant failed. All it had to do to produce an acceptable presentation cover was to add the green bar and the coupon redemption report eliminate a white spot in the green and make the red on the rebate coupon the same as the red in the brochure. This it could have done inasmuch as it had already done so in the bars around the logo and in the fifty cents redemption coupon. Instead it somehow changed its process and darkened everything considerably changing the bright red bars around the logo to a purple and changing the red in "migrainol" coupon to a much deeper tone than in the brochure. Not only was the overall aspect of the presentation CT Page 3908 cover darkened but the rebate coupon and the "save fifty cent" coupon were now entirely different colors with the blues practically eliminated.
The fact that the plaintiff's agent signed the so-called sign-off sheet and checked off "OK to print as is" is ineffective as a defense to printing the final product. It is obvious that it was not intended that the second proof be printed as is but was to be changed. It would be in accordance with acceptable printing practice to send a proof of such changes to the plaintiff before proceeding with the entire job.
In the opinion of this court the defendant has breached its agreement with the plaintiff by having produced a product which does not conform to the terms of the agreement i. e. an inferior product which did not match the colors of the brochure as closely as the defendant had already shown that it could so match the colors.
In the opinion of the court the defendant was also negligent in running off 5000 copies of the covers plus an overrun without having consulted with the plaintiff as to the final product.
While the plaintiff has alleged a loss of business because of the breach of contract and the negligence of the defendant the court is of the opinion that it has failed in its proof in this regard. The evidence submitted i.e. a comparison between the amount of business picked up during a period within which the old presentation covers were used and a period in which the newer colored presentation covers (printed for the plaintiff by another corporation) were used lacked any controls. While defendant testified that nothing else had changed there was no evidence offered to indicate that any individuals were influenced by the changes in the covers. There was no evidence submitted with respect to the natural growth of the business and there was no evidence as to what literature the presentation covers contained when they were distributed; to whom they were distributed; to what types of businesses, etc. And it was also clear on examination of the exhibits submitted that there were duplications, omissions and errors on the lists of customers as well as inconsistent data etc. CT Page 3909
In the opinion of the court the proven measure of damages in this case is the loss of the use of the money that the plaintiff spent in its attempt to have new brochures printed. The only evidence of the plaintiff's expense in negotiating for the presentation covers was the actual advance payment to the defendant in the amount of $4265.12. Accordingly judgment may enter for the plaintiff in the amount of $4265.12 plus interest on each payment made from the date it was made.
In the second count the plaintiff has alleged a breach of contract and the defendant's refusal to return certain artwork which was turned over to the defendant by the plaintiff for use in duplicating the artwork of the brochure. This is artwork which had been used originally to produce the brochure. Plaintiff has also alleged that the failure to turn over this artwork constitutes theft and violation of § 52-564
of the Connecticut General Statutes and in paragraph five the plaintiff has alleged that said refusal to turn over this artwork is a violation of § 42a-110 (CUTPA). In the opinion of this court this is the property of the plaintiff inasmuch as it was originally produced for the purposes of printing the brochure and was loaned to the defendant for purposes of printing the presentation cover. Since, the contract of the presentation cover was breached and the contract was not fulfilled in accordance with its terms the defendant has no claim to same and is herewith ordered to return same to the plaintiff forthwith.
With respect to the claim of theft the court finds there is no merit to this claim. There is insufficient evidence to indicate a sufficient intention to fit the matter within the statute and the same is true with respect to the CUTPA claim.
The defendant maintains in the counterclaim that the plaintiff breached the contract and seeks to have the plaintiff fulfill the contract or pay damages and is holding the artwork until the matter is resolved. With respect to the defendant's counterclaim the court finds no merit to any of the three counts. As indicated in the earlier portion of this opinion the defendant not the plaintiff is in breach of the contract. Judgment may enter for the plaintiff on the defendant's counterclaim. The artwork is to be returned and the defendant is to pay the judgment forthwith. CT Page 3910
Robert J. Hale State Judge Referee